1  **WO**

2

3

4

5

6                IN THE UNITED STATES DISTRICT COURT

7                    FOR THE DISTRICT OF ARIZONA

8

9  Pamela D. April, a single woman,          )   No. CV-09-1707-PHX-LOA
                                             )
10         Plaintiff,                         )   **AMENDED ORDER**
                                             )
11  vs.                                       )
                                             )
12  US Airways, Inc., a Delaware              )
    corporation,                              )
13                                            )
           Defendant.                         )
14  _____  )

15         This matter is before the Court on US Airways, Inc.'s ("Defendant") Motion for

16  Summary Judgment pursuant to Fed.R.Civ.P. 56. (Doc. 71) Pamela D. April ("Plaintiff")

17  opposes the Motion. (Doc. 75) All parties have consented in writing to magistrate-judge

18  jurisdiction pursuant to 28 U.S.C. § 636(c)(1). (Doc. 15) After considering the briefing and

19  exhibits submitted on the Motion and the relevant case law, the Court concludes that Defendant

20  is entitled to summary judgment.

21  **I. Background**

22         Plaintiff's Amended Complaint alleges violation of the Americans with Disabilities

23  Act ("ADA"), 42 U.S.C. § 12101, *et seq.*, and the Arizona Civil Rights Act ("ACRA"), Arizona

24  Revised Statutes ("A.R.S.") § 41-1463(B)(1). (Doc. 9)  Plaintiff suffers from psoriasis which

25  she alleges is a disability under the ADA. Her claims arise out of her two-year employment as

26  a part-time customer service agent at US Airways' operational hub located at Sky Harbor

27

28

International Airport. (DSOF ¶ 1-2, 83, 115[1])  It is undisputed that, during the first eighteen months of her employment, Plaintiff received approval for, at least, five leaves of absence for various reasons including a death in the family, childcare issues, an ovarian cyst, and tonsillitis. (DSOF ¶ ¶ 23- 25, 27, 29, 37; PSOF ¶ 23-25, 27, 29, 37)

In October 2007, Plaintiff requested a brief leave of absence due to a medical condition, psoriasis. (DSOF ¶ 34; PSOF 34)  In support of her request, Plaintiff submitted a letter from her treating dermatologist, Dr. William Ko, stating that he favored "a short time off work" for Plaintiff to recover from the flare-up of her psoriasis. (DSOF ¶ 35; PSOF ¶ 35) Defendant granted Plaintiff's leave request.  (DSOF ¶ 34; PSOF ¶ 34)  This was Plaintiff's first request for leave related to psoriasis. (DSOF ¶ 23-33)

In January 2008, Plaintiff requested a leave of absence from January 3 to January 17, 2008.  (DSOF ¶ 42-43)  There is no dispute that Defendant denied Plaintiff's leave request because Plaintiff's treating dermatologist, Dr. Ko, indicated that Plaintiff did not need leave. Dr. Ko indicated that, although Plaintiff's psoriasis flared up and she was experiencing redness, soreness and discomfort, her ability to perform her job was not restricted.  (DSOF ¶ 43-44; PSOF ¶ 43-44)  Although Defendant denied Plaintiff's request for medical leave, it granted her a brief personal leave from January 3 to January 17, 2008 to get her affairs in order and return to work.  (DSOF ¶ 44; PSOF ¶ 44)

In early February 2008, Plaintiff's psoriasis flared again.  The flare was a continuation and worsening of the flare up for which she had seen Dr. Ko in January 2008.  (DSOF ¶ 47, 49; PSOF ¶ 47,49)  On February 11, 2008, Plaintiff verbally requested a leave of absence based on her psoriasis' flare from Dan Jensen, one of the Shift Supervisors who administered employee leave.  (DSOF ¶ 53-54; PSOF § 53-54)  Jensen gave Plaintiff a Health Care Provider Form and told Plaintiff that he would take care of processing Plaintiff's leave request after he received the necessary paperwork from Dr. Ko. He also told Plaintiff not to report for her scheduled shift that

---

[1]  Citations to "DSOF" are to Defendants Statement of Facts, doc. 72.  Citations to "PSOF" are to Plaintiff's Controverting Statement of Facts, doc. 76.

1  evening.  (DSOF ¶¶ 55-57)

2        Dr. Ko later submitted paperwork to US Airways, specifying that Plaintiff could

3  return to work in four to six weeks because he believed her psoriasis would improve within four

4  to six weeks under his treatment. (DSOF ¶ 64-66)   Plaintiff, however, did not return to work

5  after six weeks. US Airways terminated Plaintiff's employment, effective April 17, 2008, due

6  to job abandonment.  (DSOF ¶¶ 106-108; PSOF ¶ 106-108)

7        Plaintiff alleges that her psoriasis is a disability that Defendant should have

8  accommodated with an indefinite leave of absence.  Plaintiff filed an administrative charge and

9  eventually this lawsuit, alleging that US Airways failed to accommodate her disability in

10  violation of the ADA and the ACRA by failing to grant her February 11, 2008 request for an

11  indefinite medical leave of absence.  Defendant argues that it is entitled to summary judgment

12  because: (1) Plaintiff's ACRA claim is untimely; (2) Plaintiff is not disabled; and (3) even if

13  Plaintiff were considered disabled, no reasonable accommodation existed that would have

14  allowed Plaintiff to perform the essential functions of her job.

15  **II.  Legal Standard**

16        Summary judgment is appropriate when the pleadings and supporting documents,

17  viewed in the light most favorable to the nonmoving party, show that there is no genuine issue

18  as to any material fact and that the moving party is entitled to judgment as a matter of law.

19  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Jesinger v. Nevada Fed. Credit Union*,

20  24 F.3d 1127, 1130 (9th Cir. 1994); Fed.R.Civ.P. 56(a) ("[T]he court shall grant summary

21  judgment if the movant shows that there is no genuine dispute as to any material fact and the

22  movant is entitled to judgment as a matter of law. . . ."). Substantive law determines which facts

23  are material.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Jesinger*, 24 F.3d. at

24  1130.  In addition, "[o]nly disputes over facts that might affect the outcome of the suit under the

25  governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at

26  248.  The dispute must be genuine, that is, "the evidence is such that a reasonable jury could

27  return a verdict for the nonmoving party." *Id.*

28        A principal purpose of summary judgment is "to isolate and dispose of factually

1   unsupported claims." *Celotex*, 477 U.S. at 323-24.  Summary judgment is appropriate against

2   a party who "fails to make a showing sufficient to establish the existence of an element essential

3   to that party's case, and on which that party will bear the burden of proof at trial."  *Id*. at 322;

4   *Citadel Holding Corp. v. Roven*, 26 F.3d 960, 964 (9th Cir. 1994).

5        The party opposing summary judgment may not rest upon the mere allegations or

6   denials of the party's pleadings, but must set forth specific facts showing that there is a genuine

7   issue for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87

8   (1986); *Brinson v. Lind Rose Joint Venture*, 53 F.3d 1044, 1049 (9th Cir. 1995); Fed.R.Civ.P.

9   56(e)(3) ("If a party fails to properly support an assertion of fact or fails to properly address

10  another party's assertion of fact as required by Rule 56(c), the court may . . . grant summary

11  judgment if the motion and supporting materials--including the facts considered

12  undisputed--show that the movant is entitled to it[.]"). There is no issue for trial unless there is

13  sufficient evidence favoring the nonmoving party.  If the evidence is merely colorable or is not

14  significantly probative, summary judgment may be granted.  *Anderson*, 477 U.S. at 249-50.

15  However, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are

16  to be drawn in his [or her] favor."  *Id*. at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144,

17  158-59 (1970)).

18       Whatever facts which may establish a genuine issue of fact must *both* be in the

19  district court's file and set forth in the response. *Carmen v. San Francisco Unified School*

20  *District*, 237 F.3d 1026, 1029 (9th Cir. 2001); Rule 56(c)(3), Fed.R.Civ.P.   The trial court

21           may determine whether there is a genuine issue of fact, on summary judgment,
             based on the papers submitted on the motion and such other papers as may be on
22           file and specifically referred to and facts therein set forth in the motion papers.
             Though the court has discretion in appropriate circumstances to consider other
23           materials, it need not do so.  The district court need not examine the entire file for
             evidence establishing a genuine issue of fact, where the evidence is not set forth
24           in the opposing papers with adequate references so that it could conveniently be
             found.
25
    *Id.* at 1031.
26
    **III.  ADA Claim**
27
28       Defendant asserts, and Plaintiff does not dispute, that Plaintiff's ADA claim must be

analyzed under the 2006 ADA without consideration of the ADA Amendments Act ("ADAAA").  The Court agrees that the ADAAA does not apply in this case.  The ADAAA "does not apply retroactively" to employment actions taken before January 1, 2009, the effective date of the ADAAA.  *Becerril v. Pima County Assessor's Office*, 587 F.3d 1162, 1164 (9th Cir. 2009).   All of the events underlying Plaintiff's claims occurred between February and June 2008, before the ADAAA's January 1, 2009 effective date.  Accordingly, the pre-ADAAA version of the ADA applies to this case.  *Id.*

The American with Disabilities Act (ADA) provides, in relevant part:

> No covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

42 U.S.C. § 12112(a).  Here, Plaintiff alleges that she was terminated because of her disability and that no effort was made to provide Plaintiff a reasonable accommodation that would allow her to work despite her disability. (Doc. 8 at 5)  To establish a violation of the ADA, plaintiff must establish that she was a qualified individual with a disability. *Id.*; *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 477-78 (1999).[2]  When, as in this case, the discrimination claim is based on a failure to accommodate, the plaintiff's *prima facie* case requires a showing that (1) she is disabled; (2) she is qualified for her job; and (3) a reasonable accommodation is facially possible and she was denied that reasonable accommodation. *Pickens v. Astrue*, 252 Fed. Appx. 795, 796 (9th Cir. 2007) (citing *Buckingham v. United States*, 998 F.2d 735, 739-40 (9th Cir. 1993)).

Defendant argues that it is entitled to summary judgment on Plaintiff's ADA claim because Plaintiff was not disabled and, even if she was, US Airways did not deny her a

---

[2] This case has been overruled by the amendments to the ADA, effective January 1, 2009. *See* ADA Amendments Act of 2008, Pub.L. 110-325, 122 Stat. 3553 (2008). As noted above, however, the amendments do not apply to this case. *Becerril*, 587 F.3d at 1164.

reasonable accommodation. Plaintiff opposes Defendants' motion. As discussed below, the Court finds that Defendant is entitled to summary judgment on Plaintiff's ADA claim.

### A. Disability under the ADA

A plaintiff bears the burden of showing she is disabled under the ADA. *Thornton v. McClatchy Newspapers, Inc.*, 261 F.3d 789, 794 (9th Cir. 2001). The ADA defines "disability" as "(A) a physical or mental impairment that substantially limits one or more major life activities of [the] individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2). Thus, the ADA's application depends, in part, on whether the plaintiff's asserted impairment is a "disability" within the meaning of the ADA; and this, in turn, depends on whether the asserted impairment "substantially limits" one or more major life activities of the plaintiff. 42 U.S.C. § 12102(1)(A).

A major life activity is a function "such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i); 42 U.S.C. § 12102(2)(A). Additionally, an impairment is not substantially limiting unless it prevents or severely restricts a plaintiff from performing activities that are of central importance to most people's daily lives and the impairment is permanent or long-term. *Toyota Motor Mfg. v. Williams*, 534 U.S. 184, 198 (2002).[3] To be substantially limited in any of these activities, a person must be unable to perform the major life activity or be "significantly restricted as to condition, manner or duration under which [she] can perform a particular major life activity as compared to the condition, manner or duration under which the average person in the general population can perform that same major life activity." 29 C.F.R. § 1630.2(j); *Toyota Motor Mfg.*, 534 U.S. at 195; *EEOC v. United Parcel Serv., Inc.*, 306 F.3d 794, 802 (9th Cir. 2002).

Three factors are to be considered in determining whether an individual is substantially limited in a major life activity: (1) the nature and severity of the impairment; (2)

---

[3] This case has been overruled, in part, by the amendments to the ADA, effective January 1, 2009. ADA Amendments Act of 2008, Pub.L. 110-325, 122 Stat. 3553 (2008). As noted above, however, the amendments do not apply to this case. *Becerril*, 587 F.3d at 1164.

the duration or expected duration of the impairment; and (3) the permanent or long-term impact, or expected permanent or long-term impact of or resulting from the impairment. 29 C.F.R. § 1630.2(j)(2).

In its Motion for Summary Judgment, Defendant argues that Plaintiff has failed to show a qualifying disability under the ADA. Defendant does not argue that Plaintiff's psoriasis is not an "impairment."[4] Nor does Defendant challenge Plaintiff's proffered major life activities - interacting with others, standing and wearing clothes. Rather, Defendant argues that Plaintiff failed to present evidence that her condition "substantially limits" her in performing the major life activities of interacting with others, standing, and wearing clothes. 42 U.S.C. § 12102(2) (defining disability so as to require a showing that the impairment at issue "substantially limits" a major life activity).

Although the Amended Complaint does not allege that Plaintiff's psoriasis substantially limits any major life activities, a potentially fatal defect, it appears that Plaintiff made such assertions during her deposition. (Doc. 76, Exh. 1, April's Deposition)  Thus, as Defendant has done in its motion for summary judgment, the Court will consider whether Plaintiff's psoriasis substantially limits the major life activities mentioned in the record. In her Response to the Motion for Summary Judgment, Plaintiff generally asserts that her psoriasis "requires constant attention even when dormant," "affects her clothing choices," and that

---

[4] An impairment under the ADA is defined as:

(1) Any physiological disorder, or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems: neurological, musculoskeletal, special sense organs, respiratory (including speech organs), cardiovascular, reproductive, digestive, genito-urinary, hemic and lymphatic, skin, and endocrine; or

(2) Any mental or psychological disorder, such as mental retardation, organic brain syndrome, emotional or mental illness, and specific learning disabilities.

29 C.F.R. § 1630.2(h).

"[s]ome areas of skin irritation and abnormality may remain even between flares." (Doc. 75 at 8; PSOF ¶ 151)  She states that when her psoriasis flares up "she prefers to not wear clothing as much as possible because clothes are uncomfortable for her."  (PSOF ¶ 161)  She further asserts that "[n]early half her body was covered with lesions" on the dates her leave request was denied and she was terminated.  (Doc. 75 at 9)  She also contends that her psoriasis "interrupts her life because 'it is a "high maintenance disease [that] requires a lot of care."'" (PSOF ¶ 151, quoting Plaintiff's Depo at 61)  She explains that caring for her psoriasis requires applying "various creams and ointments."  (PSOF ¶ 151)  Plaintiff asserts in the record, if not in the Amended Complaint, that her psoriasis substantially limits the major life activities of interacting with others, standing, and wearing clothes.

Plaintiff contends that her psoriasis substantially limits her ability to interact with others.  To make such a showing, Plaintiff bears the burden of establishing that her "relations with others were characterized on a *regular basis* by *severe problems* . . . ."  *Head v. Glacier NW Inc.*, 413 F.3d 1053, 1060 (9th Cir. 2005) (emphasis added).  Plaintiff testified that felt she could not be seen by other people until her psoriasis flare cleared. (DSOF ¶¶ 13, 94) In its Motion for Summary Judgment, Defendant argues that Plaintiff's activities are inconsistent with this assertion. Plaintiff's Response does not address Defendant's arguments and citations to the record pertaining to the major life activity of interacting with the public. (Doc. 75)  Under either the version of Federal Rule of Civil Procedure 56(e), which was in effect when the Motion for Summary Judgment was briefed, or that took effect on December 1, 2010, a party opposing a motion for summary judgment must do more than rely on one's own allegations or denials in one's pleadings, but must set out - by affidavits or otherwise- specific facts that show a genuine issue for trial. Fed.R.Civ.P. 56(e)(2) (West 2010, effective until December 1, 2010); Fed. R.Civ.P. 56(c), (f), effective after December 1, 2010). Here, Plaintiff's complete failure to respond to Defendant's argument and evidence that Plaintiff's psoriasis did not substantially limit her ability to interact with the public cannot create a genuine issue of fact for trial.

Additionally, as Defendant argues, Plaintiff's activities do not support a finding, or create a material issue of fact for jury resolution, that she was substantially limited in interacting

with the public. Plaintiff does not dispute that, between 2004 and 2009, she served as a foster parent to 15 children, including active toddlers and a child with a mental disability. (DSOF ¶ 134, 137; PSOF ¶ 134, 137) Plaintiff also does not dispute that she passed physical examinations to certify that she was in good health in order to perform her fostercare duties. (DSOF ¶ 135, PSOF ¶ 135) During the time Plaintiff alleges she was disabled, she fostered two children - ages 3 and 4 - from April 2008 through October 2008. (DSOF ¶ 137, Exh. 2, April Depo at 33-34; PSOF ¶ 137) Just prior to that, Plaintiff fostered two children from October of 2006 to February of 2008. (DSOF , Exh. 2, April Depo at 32-33)

When Plaintiff requested leave for her psoriasis in January 2008, Dr. Ko certified that she did not need time off work and that she could perform all of her job functions despite her psoriasis flare. (DSOF ¶ 42-44) Consistent with Dr. Ko's assessment that Plaintiff did not have any limitations due to the flare, Plaintiff traveled to Maui, Hawaii with a friend in late January 2008. (DSOF ¶ 46; PSOF ¶ 154) Plaintiff contends that she traveled to Maui to rest and "get away" and stayed in the hotel room and rested. (PSOF ¶ 154) In her deposition, Plaintiff testified that she did not go to the beach, and that she "drove through McDonald's for dinner." (Doc. 76, Exh. 1, April Depo at 228-229) She testified that she was able to fly and took sleeping pills during the five hour flight. (*Id*. at 229)

Between February and June of 2008, when Plaintiff allegedly believed she was on indefinite leave, Plaintiff continued to travel. In March 2008, she flew by herself to Dallas, Texas to visit her brother. (Doc. 76, April Depo at 192) Plaintiff had an appointment scheduled with Dr. Ko on March 10, 2008 to treat her psoriasis flare, but cancelled that appointment. (DSOF ¶ 96, ¶ 89; PSOF ¶ 89) In June of 2008, Plaintiff flew to California with her 12-year-old son and his friend. (DSOF  ¶ 98-99; PSOF 98-99, April Depo at 189-90) She took the boys to the Universal Studios for two days. (*Id*.; PSOF ¶ 98, April Depo at 191) When asked how much time she spent at Universal Studios, Plaintiff first testified that "my family always tortured me and made us go the entire time." (Doc. 76, April Depo at 191) She then stated, "I mean, the boys were there all day," and that she spent "maybe three hours each day" at Universal Studios. (Doc. 76, April Depo at 191-92) She testified that she "walked and watched the boys."

1   (Doc. 76, April Depo at 190)

2        Plaintiff does not dispute that she took a seven-day vacation to Paris, France in July

3   2008. (PSOF ¶ 101; (DSOF ¶ 101, Exh. 2, April Depo at 226-227)   Although Plaintiff's

4   psoriasis was flared at the time and she felt she was unable to work, she took the trip because

5   it "was planned." (DSOF ¶ 101, Exh. 2 April Depo at 226-227)   Plaintiff does not dispute that

6   she did not see Dr. Ko for follow-up treatment until November 2008, over nine months after he

7   initially certified her request for leave in February 2008. (DSOF ¶ 87, 89-92; PSOF ¶ 87, 89-

8   92)

9        Plaintiff has not established that she was substantially limited in her ability to interact

10   with others.  Rather, she regularly visited public places where she encountered other people -

11   including family, friends, and strangers. Plaintiff went to airports, rode on commercial airplanes,

12   visited an amusement park, stayed in hotels, and went sightseeing in Paris.  (DSOF 96, 98, 101)

13   Plaintiff has not shown that there is a genuine dispute of material fact regarding whether

14   Plaintiff was substantially limited in the major life activity of interacting with others.

15        Plaintiff also alleges that her psoriasis substantially limits her ability to stand for

16   "certain periods of time" due to a skin plaque on her foot. (DSOF ¶ 97; PSOF ¶ 97)   In the

17   Motion for Summary Judgment, Defendant argues that Plaintiff's activities are inconsistent with

18   this assertion.  Plaintiff has not responded in any manner to Defendant's arguments regarding

19   the major life activity of standing. (Doc. 75)   Under either version of Federal Rule of Civil

20   Procedure 56(e), which was in effect when the Motion for Summary Judgment was briefed, or

21   that took effect on December 1, 2010, a party opposing a motion for summary judgment must

22   do more than rely on her own allegations or denials in her pleadings, but must set out - by

23   affidavits or otherwise- specific facts that show a genuine issue for trial. Fed.R.Civ.P. 56(e)(2)

24   (West 2010, effective until December 1, 2010); Fed.R.Civ.P. 56(c), (f), effective after December

25   1, 2010).  Here, Plaintiff's complete failure to respond to Defendant's argument and evidence

26   that Plaintiff's psoriasis did not substantially limit her ability to stand cannot create a genuine

27   issue of fact for trial.

28        Additionally, the record supports Defendant's argument that Plaintiff's activities show

1   that she was not substantially limited in standing.  As set forth above, Plaintiff took a seven-day

2   trip to Paris where she went sightseeing. There is no evidence she used a special device, like a

3   cane, wheelchair, walker, or crutches for assistance. Plaintiff was able to navigate through

4   airports to catch flights to and from Paris without such devices. Plaintiff also served as a

5   fosterparent for toddlers and cared for her own sons, ages two and twelve.  (DSOF 96, 98, 101,

6   134, 137)  Plaintiff also traveled to Texas and California where she spent "maybe three hours

7   each day" at Universal Studios with her 12-year-old son and his friend.  (Doc. 76, April Depo

8   at 190-92) She testified that she "walked and watched the boys."  (Doc. 76, April Depo at 190)

9   Plaintiff has not demonstrated that the skin plaque on her foot substantially restricted her ability

10  to stand, or restricted her ability to stand for a long term.  *Taylor v. Pathmark Stores, Inc.*, 177

11  F.3d 180, 186-87 (3d Cir. 1999) (finding that a cashier who could only stand for 50 minutes

12  without a break was not disabled under the ADA); *Miller v. Airborne*, 1999 WL 47242, at * 5

13  (N.D. Tex., Jan. 22, 1999).

14          Finally, Plaintiff alleges that she was substantially limited in her ability wear clothes.

15  (DSOF ¶ 94) Again, Plaintiff's own deposition testimony does not support this allegation.

16  Plaintiff asserts that, when her psoriasis is flared, "she prefers to not wear clothing as much as

17  possible because clothes are uncomfortable for her." (PSOF ¶ 161)  In her response to the

18  Motion for Summary Judgment, Plaintiff asserts that her psoriasis requires attention even when

19  dormant, and that some skin irritation may remain active between flares. (Doc. 75; PSOF ¶ 16)

20  She also states that "[i]t affects her clothing choices." (Doc. 75 at 8; PSOF ¶ 151)  However,

21  she does not provide any specific information indicating that her clothing choices were affected

22  substantailly or in the long term. (Doc. 76, Exh. 1, April Depo at 61) Even assuming Plaintiff's

23  psoriasis affects the major life activity of wearing clothes, she must show that the limitation on

24  that major life activity is substantial. *Colwell v. Suffolk County Police Department*, 158 F.3d

25  635, 641 (2d Cir. 1998); *Talk v. Delta Airlines, Inc.*, 165 F.3d 1021, 1025 (5th Cir. 1999)

26  (although plaintiff wore corrective shoes for a deformity in her leg and foot, she was not

27  substantially limited in the major life activity of walking); *Penny v. United Parcel Service*, 128

28  F.3d 408, 415 (6th Cir. 1997) (moderate difficulty or pain experienced while walking does not

substantially limit the life activity of walking).

Although Plaintiff preferred to wear a minimal amount of clothing when her psoriasis was flared, she does not dispute that she wore more clothing than usual while traveling in 2008 - including long sleeves, pants, and a hat. (DSOF ¶ 100, doc. 72, Exh. 2 April Depo at 195-196; PSOF ¶ 100)  Although Plaintiff testified that she removed clothing when she was in her hotel room in California and when her brother was at work when she visited him in Dallas, she does not provide any specific information indicating how or to what extent she was limited in wearing clothing.  (Doc. 72, Exh. 2 April Depo at 190, 193)   She wore clothes while she traveled from Arizona to California, Dallas, and on a trans-Atlantic flight to France.  She wore clothing for, at least, the three hours each day she spent at Universal Studios with her 12-year-old son and his friend.  (Doc. 76, April Depo at 190-92)  She testified that she wore long sleeves to work and her "uniform was long-sleeve."  (Doc. 72, Exh. 2 April Depo at 195-196)  Dr. Ko testified that Plaintiff could wear clothing during even her most severe flare that began in February 2008.  (DSOF ¶ 95; doc. 73, Exh. 4, Ko Depo at 74-75)   Dr. Ko testified that it was not necessary for Plaintiff to "be without clothes."  (*Id*.)

In summary, Plaintiff has not created a genuine dispute of material issue of fact for jury resolution regarding whether her psoriasis substantially limited her ability to perform any major life activity.  Accordingly, she is not disabled under the ADA.  *Verhoff v. Time Warner Cable, Inc*., 299 Fed.Appx. 488, 493 (6th Cir. 2008) (affirming summary judgment because employee's inability to normally wear clothes or shoes due to his eczema did not substantially impair any major life activity). Rather than providing evidence specific to her own condition, in response to the Motion for Summary Judgment, Plaintiff relies on the Sixth Circuit's decision, *Cehrs v. Northeast Ohio Alzheimer's Research Center*, 155 F.3d 775 (6th Cir. 1998). Whether an impairment constitutes a disability, however, is fact specific and determined on a case-by-case basis. *Sutton*, 527 U.S. at 483; *Albertson's v. Kirkingburg*, 527 U.S. 555, 556 (1999); *Bragdon v. Abbott*, 524 U.S. 624, 641-642 (1998) (declining to consider whether HIV infection is a *per se* disability under the ADA); 29 CFR pt. 1630, App. § 1630.2(j) (The determination of whether an individual has a disability is not necessarily based on the name or

1   diagnosis of the impairment the person has, but rather on the effect of that impairment on the

2   life of the individual).

3          Plaintiff cannot rely solely on *Cehrs* to establish her case.  Moreover, *Cehrs* is

4   distinguishable from this case.  The plaintiff in *Cehrs* suffered from the most severe, life-

5   threatening form of psoriasis, pustular psoriasis, and also suffered from psoriatic arthritis.

6   *Cehrs*, 155 F.3d at 777.  Cehrs suffered from "red scalded skin with pustules" with linings of

7   pus, and arthritis, causing pain in all of her joints, especially her hands, hips, knees and feet.

8   *Id*.  Cehrs' condition was so severe that she was unable to care for herself, and was unable to

9   drive or use a telephone. *Id*. at 778. "She receive[d] weekly medication and treatment, even

10  when the psoriasis is dormant. This medication sometimes causes her to lose her hair and

11  fingernails, and occasionally causes her skin to peel." *Id*. Because *Cehrs*' psoriasis caused

12  persistent skin irritations, she was "constantly afraid of other people's reactions to her condition.

13  Her entire appearance, including the clothes she wears, is dictated by her psoriasis." *Id*. at 781.

14  The court found there was a genuine issue of material fact as to whether Cehrs' psoriasis

15  substantially limited her in the major life activity of work and caring for herself.

16          Unlike *Cehrs*, Plaintiff has psoriasis vulgaris, not psoriatic arthritis or pustular

17  psoriasis. (DSOF ¶ 9)  Additionally, Plaintiff does not allege that she is substantially limited in

18  the major life activity of work. As noted above, Plaintiff has not provided sufficient evidence

19  to create a genuine issue of material fact regarding whether her psoriasis substantially limited

20  any other major life activity. "Even though factual allegations in a motion for summary

21  judgment must be viewed in the light most favorable to the non-moving party, summary

22  judgment is mandated if the non-moving party 'fails to make a showing sufficient to establish

23  the existence of an element essential to that party's case.'" *Broussard*, 192 F.3d at 1258

24  (quoting *Celotex*, 477 U.S. at 322). Defendant carried its burden as the moving party under

25  summary judgment standards.  Plaintiff's obligation, to avoid summary judgment, is to cite

26  particular items of evidence she contends create triable issues of fact.  Plaintiff has not provided

27  such evidence in this case.

28          Although Plaintiff may experience some discomfort wearing clothes, interacting with

1   others, or standing, the probative evidence, even when viewed in the light most favorable to

2   Plaintiff, does not raise a genuine issue of material fact as to whether Plaintiff's impairment

3   substantially limits any of those major life activities. Thus, the Court need not consider whether

4   Plaintiff could perform the essential functions of her job, with or without accommodation, or

5   whether Defendant in fact reasonably accommodated Plaintiff.

6               **B. Medicated Psoriasis**

7               Plaintiff also fails to discuss whether her psoriasis, when treated, substantially limited

8   any major life activities. Under the ADA as interpreted at the time of the events giving rise to

9   Plaintiff's claims, "the ADA's coverage is restricted to only those whose impairments are not

10  mitigated by corrective measures." *Sutton*, 527 U.S. at 487. Accordingly, "disability under the

11  Act is to be determined with reference to corrective measures." *Id*. at 488-89. In other words,

12  a determination of whether an impairment substantially limits a major life activity must consider

13  whether medication or other measures might mitigate the negative effects of the impairment.

14  *Id*. at 482. When an impairment is, or could be, corrected by mitigating measures, the

15  impairment does not substantially limit a major life activity. *Id*. at 483. "[A] person whose

16  physical or mental impairment is corrected by mitigating measures still has an impairment, but

17  if the impairment is corrected it does not 'substantially limi[t]' a major life activity." *Id*. at

18  482-83.

19              Plaintiff bears the burden of showing that her medicated psoriasis substantially limited

20  her ability to interact with others, stand on a long-term basis, or wear clothing. *Desantis v.*

21  *Napolitano*, 2010 WL 2292592, at * 18 (D.N.M. 2010) (plaintiff not disabled because he was

22  able to control symptoms of post-traumatic stress disorder, despite periodic flare-ups).

23              In the Motion for Summary Judgment, Defendant points to evidence in the record

24  indicating that medication can control Plaintiff's psoriasis flares. (DSOF ¶ 14, 17) Plaintiff

25  "does not dispute that the effectiveness of medication affects the duration of her flare-ups."

26  (PSOF ¶ 14) Plaintiff's Response does not discuss Defendant's arguments regarding her

27  medicated psoriasis. Although Plaintiff's Statement of Facts disputes Dr. Ko's statement that

28  her flare-ups have "at all times been effectively controlled with prescription medications," she

1    does not discuss her medicated psoriasis or indicate what impact her medicated condition had

2    on her major life activities. (Doc. 75; PSOF 14)  There is evidence that if Plaintiff had continued

3    taking her medication, her February 2008 flare would have lasted four to six weeks - a short

4    duration that does not meet the requirement that a limitation on a major life activity be

5    "permanent or long-term." *Toyota*, 534 U.S. at 691; (DSOF ¶ 66)

6           Finally, the Court finds Plaintiff's contention that her psoriasis is worsening is

7    unhelpful in determining whether a disputed issue of fact exists.  During her May 2010

8    deposition, Plaintiff testified that she currently experiences "regular" flare-ups that last from one

9    month to a year.  (PSOF ¶ 150; April Depo 60-61)  However, Plaintiff's Amended Complaint

10   is based on her termination in 2008.  Thus, as Plaintiff herself notes, the Court looks to

11   Plaintiff's medical condition during this time frame to resolve the instant issue and not to her

12   condition months and years later. That Plaintiff's psoriasis may have worsened does not support

13   her contention that she was disabled at the time of her termination.

14   **IV. Plaintiff's ACRA Claim**

15          Defendant asserts that Plaintiff's ACRA claim is untimely.  Plaintiff alleges that her

16   ACRA claim should be considered timely.

17          A plaintiff must file an ACRA claim within 90 days of the earlier of receiving from

18   the Arizona Civil Rights Division ("ACRD") a Notice of Right to Sue, or within one year from

19   the date she filed her charge of discrimination with the ACRD. A.R.S. § 41-1481(D).  Here,

20   Plaintiff filed her charge with the ACRD on July 10, 2008. She received ACRD's Notice of

21   Right to Sue on October 16, 2008. (DSOF ¶ 139)  Therefore, Plaintiff had to file her lawsuit on

22   the earlier of January 14, 2009 (90 days after receiving her Notice of Right to Sue) or July 10,

23   2009 (one year after she filed her charge). In other words, Plaintiff had to file her lawsuit

24   asserting a violation of the ACRA on or before January 14, 2009.  Plaintiff, however, did not

25   commence her lawsuit until August 18, 2009, seven months too late.  (Doc. 1)

26          The Court need not determine whether Plaintiff's ACRA claim is timely.  Even if the

27   ACRA claim were timely filed, it should be denied on the merits on the same grounds as her

28   ADA claims as set forth above. *Shulock v City of Tucson*, 2010 WL 2720839, at * 6 n. 3

1    (D.Ariz. 2010) (stating that the ADA analysis applies to the ACRA claim, therefore if plaintiff's

2    ADA claim does not survive, summary judgment is proper as to the ACRA claim on the same

3    grounds) (citing *Fancini v. Phoenix Newspapers Ind.*, 188 Ariz. 576, 582, 937 P.2d 1382, 1388

4    (Az.Ct.App. 1996) (ACRA is modeled after federal employment discrimination laws); *Nelson*

5    *v. Cyprus Bagdad Copper Corp.*, 119 F.3d 756, 762 (9th Cir. 1997) (ADA expressly adopts

6    enforcement provision of Title VII, including relevant portions of ACRA).

7    **V.  Summary**

8        Although Plaintiff may experience some discomfort wearing clothes, interacting with

9    others, or standing, the probative evidence, even when viewed in the light most favorable to

10    Plaintiff, does not raise a genuine issue of material fact as to whether Plaintiff's impairment

11    substantially limits any of those major life activities. Thus, the Court need not consider whether

12    Plaintiff could perform the essential functions of her job, with or without accommodation, or

13    whether Defendant in fact reasonably accommodated Plaintiff. Because the Court finds that

14    Plaintiff is not disabled under the ADA and the ACRA, it need not reach the other issues raised

15    in Defendant's motion for summary judgment.

16        Accordingly,

17        **IT IS ORDERED** that Defendant US Airways, Inc.'s Motion for Summary Judgment

18    pursuant to Fed.R.Civ.P. 56, doc. 71, is **GRANTED**. The Clerk of Court is kindly directed to

19    enter judgment in favor of Defendant and terminate this case.

20        **IT IS FURTHER ORDERED** that the Clerk of Court is kindly directed to file an

21    Amended Judgment and provide the Ninth Circuit Court of Appeals with a copy of this

22    Amended Order and Amended Judgment.

23        Dated this 7th day of February, 2011.

24

25

26                       Lawrence O. Anderson
                         United States Magistrate Judge

27

28